IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOOSHIN SAMPSON,

                    Plaintiff,

          v.

SGT. SHANE SAMPSON, et al.,

                    Defendants.

HON. JEROME B. SIMANDLE

Civil No. 10-2008 (JBS/KMW)


**OPINION**

APPEARANCES:

Frances A. Hartman, Esq.
HARTMAN GILAS, LLC
513 S. Lenola Road
Suite 212
Moorestown, NJ 08057
      Counsel for Plaintiff

Richard F. Klineburger, III, Esq.
38 Haddon Avenue
Suite 100
Haddonfield, NJ 08033-2463
      Counsel for Defendant Shane Sampson

John C. Eastlack, Jr., Esq.
WEIR & PARTNERS LLP
The Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
      Counsel for Defendants Joseph C. McCray, Suso Davila, and
      the City of Camden

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

     Plaintiff, Nooshin Sampson, brings this lawsuit against her

ex-husband, Defendant Shane Sampson, who is a Camden City police

sergeant, as well as other police officers and the City of Camden

over an incident involving Nooshin Sampson's arrest for violation

of a child custody order.[1]   The matter is before the Court on
Shane Sampson's motion to dismiss the Complaint for failure to
state a claim.   [Docket Item 12.]   The principal issue is whether
the Complaint adequately alleges that Shane Sampson was acting
under color of state law when he allegedly conspired with the
other Defendants, swore a misleading criminal complaint, and was
present at Plaintiff's arrest by the New Jersey State Police.


## II.  BACKGROUND

     Plaintiff alleges that the individual Defendants conspired
to have Plaintiff improperly arrested and held in police custody
in retaliation for a custody dispute Plaintiff was having with
her ex-husband, Shane Sampson, who is a Camden City police
sergeant.

     At the time of this incident, Nooshin and Shane Sampson were
in a dispute over custody of their two year old daughter.
(Compl. ¶ 17.)   In early December 2009, Plaintiff was granted
permission by the Camden County Superior Court to take the child
on a week-long vacation to Florida, which was originally
scheduled to run from December 15, 2009 until December 22, 2009.
(Compl. ¶ 26.)   On December 21, 2009, while in Florida, Plaintiff

---

     [1]   The other individual Defendants include Joseph C. McCray,
a sergeant in the Camden City Police Department; Suso Davila,
another sergeant in the Camden City Police Department; and three
unidentified John Doe officers.

alleges that she was taken to a hospital in Tampa, Florida for injuries sustained during a fall.  (Compl. ¶ 27.)  She was advised to not travel for at least three to four days.  (Compl. ¶¶ 28-29.)

Upon discharge from the hospital in Florida on December 21, 2009, Plaintiff says that she promptly contacted the chambers of the family court judge who had granted permission for the vacation and advised the court staff of her situation, and she also left messages with Mr. Sampson and his lawyer.  (Compl. ¶¶ 31, 33.)  According to the Complaint, Mr. Sampson responded by text message and advised that he wanted the child dropped off at his house on Thursday, December 31, 2009.  (Compl. ¶ 35.)

On December 28, 2009, Plaintiff arrived from Florida at the Atlantic City Airport, along with her daughter.  (Compl. ¶ 38.) Plaintiff was immediately arrested by a New Jersey State Police officer, who advised her that a complaint-warrant for her arrest had been issued by the Camden City Police Department.  (Compl. ¶ 39.)  Plaintiff indicates that Mr. Sampson was present for the arrest and that "Plaintiff has no idea how Defendant Shane Sampson came to be present at the Atlantic City Airport during her arrest by the state police, or whether or not he was 'on duty' at the time."  (Compl. ¶ 59.)

The warrant for her arrest shows Sgt. Shane Sampson as the complaining witness and his colleague Defendant McCray as having

3

administered an oath, but it is not signed by any judicial

officer.  (Compl. Ex. A.)  Plaintiff alleges that "Rather, in

signing this complaint-warrant, Defendant Shane Sampson and

Defendant McCray took advantage of their position as police

officers and a provision of New Jersey law which allows municipal

police officers to sign a complaint-warrant without a prior

probable cause finding by a judge."  (Compl. ¶ 44.)  The

complaint-warrant signed by Defendants Sampson and McCray states

that Plaintiff was in violation of 2C:13-4A, the criminal

prohibition against custodial interference.[2]

After being held in Atlantic City for four hours, Plaintiff

alleges that she was transferred to the custody of a Camden City

Police Officer who put her in the back of a van and shackled her

legs.  (Compl. ¶¶ 70-74.)  She was taken to the Camden City

police headquarters and held for a few more hours until she was

released at 2:40 a.m. on December 29, 2009.  (Compl. ¶ 86.)

Plaintiff states that "[t]he 'charge' against Plaintiff alleged

in the complaint-warrant signed by Defendants Shane Sampson and

---

[2]  The statute provides in relevant part that "A person, including a parent, guardian or other lawful custodian, is guilty of interference with custody if he . . .  After the issuance of a temporary or final order specifying custody, joint custody rights or parenting time, takes, detains, entices or conceals a minor child from the other parent in violation of the custody or parenting time order."  N.J. Stat. Ann. § 2C:13-4A(a).  It also provides for an affirmative defense if "The actor reasonably believed that the taking or detaining of the minor child was consented to by the other parent."  § 2C:13-4A(c)(2) (emphasis added).

Sgt. McCray was dismissed as unfounded at the request of the
Camden County Prosecutor's Office."  (Compl. ¶ 96.)

Although Plaintiff is represented by counsel, her claims are
somewhat vague.  Count I of the Complaint is a claim under 42
U.S.C. § 1983 against Defendants Sampson, McCray, and Davila,
stating that Plaintiff suffered various injuries in violation of
her rights under the Fourth, Fifth, and Fourteenth Amendments of
the Constitution, but without specifying any particular analogous
cause of action (e.g., false arrest) and without identifying the
particular parts of those Amendments that are relevant.  Count II
is a similarly vague 42 U.S.C. § 1983 claim against the City of
Camden, alleging that her injuries were caused by the City of
Camden's deliberate indifference to the protection of Plaintiff's
rights, privileges and immunities as guaranteed by the
Constitution and the laws of the United States.

In the present motion, Defendant Sampson treats the claim as
one for false arrest or possibly malicious prosecution, and makes
three arguments.  First, Mr. Sampson argues that he was not
acting under color of state law when taking any of the acts
alleged in the Complaint.  Second, he argues that there was
probable cause to believe Plaintiff had committed custodial
interference.  And finally, presumably in the alternative to his
argument that he was not acting under color of state law, Sampson
invokes qualified immunity.  Because the Court finds that the

Complaint does not adequately allege that Defendant was acting under color of state law, the Court does not reach the other issues raised.

## III.   DISCUSSION

### A.   Standard

In order to give Defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability.  <u>Twombly</u>, 550 U.S. at 555; Fed. R. Civ. P. 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e. something more than the mere possibility of legal misconduct).  <u>See</u> <u>Ashcroft v.</u> <u>Iqbal</u>, 129 S.Ct. 1937, 1951 (2009).

In its review of Defendant's motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." <u>Phillips v. County of</u> <u>Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v.</u> <u>Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Following the Supreme Court precedent in <u>Iqbal</u>, the Third Circuit Court of Appeals in <u>Fowler</u> instructs district courts to conduct a two-part analysis when presented with a motion to

dismiss for failure to state a claim upon which relief may be granted.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief.  A plaintiff shows entitlement by using the facts in his complaint.

Id.

### B.  Color of State Law

An explicit requirement for liability under § 1983 is that the defendant must have acted "under color of state law."  42 U.S.C. § 1983.  "[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law."  Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).  If an officer does not depend upon the "cloak of the state's authority" as a means to commit the alleged acts, then the officer is not acting under color of state law.  Id. at 815-16.

Although not dispositive, one relevant factor is whether the actions were taken as a result of official police concerns or because of interpersonal disputes.  See Barna, 42 F.3d at 818

7

("Here there was no evidence that the alleged assault occurred as
a result of official police concerns; on the contrary, the
evidence indicates that the assault arose out of the officer's
familial and personal concerns.") (citing Delcambre v. Delcambre,
635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault
by on-duty police chief at police station did not occur under
color of state law because altercation with the plaintiff,
defendant's sister-in-law, arose out of a personal dispute and
defendant neither arrested nor threatened to arrest the
plaintiff)).  When a police officer becomes involved in his own
personal disputes, the "officer's purely private acts which are
not furthered by any actual or purposed state authority are not
acts under the color of state law."  Barna, 42 F.3d at 816-17.

        Some of the Complaint's allegations as to this element are
conclusory, and cannot satisfy the necessary factual foundation
for the claim.  The Complaint alleges that "Defendant Shane
Sampson used his position as a sergeant in the Camden City Police
Department to commit gross and flagrant violations of the civil
and constitutional rights of Plaintiff Nooshin Sampson," but does
not specify in what way Sampson so used his position beyond
having "concocted and carried out an unlawful conspiracy."
(Compl. ¶¶ 20, 22.)  Even if the latter allegation were a
specific allegation of misconduct and not the mere invocation of
legal labels, it does not explain how Sampson was acting in his

8

official capacity to concoct and carry out the conspiracy.
Plaintiff also admits that she "has no idea how Defendant Shane
Sampson came to be present at the Atlantic City Airport during
her arrest by the state police, or whether or not he was 'on
duty' at the time." (Compl. ¶ 59.)

     The relevant non-conclusory allegation in the Complaint is
that "Defendant Shane Sampson and Defendant McCray took advantage
of their position as police officers and a provision of New
Jersey law which allows municipal police officers to sign a
complaint-warrant without a prior probable cause finding by a
judge." (Compl. ¶ 44.)  Thus, the conduct into which the Court
must inquire whether Defendant was acting under color of state
law involves his swearing of a complaint that excluded key
details about Plaintiff's conduct.

     Generally speaking, the act of filing a criminal complaint
does not constitute an action taken under color of state law,
since any individual may do so.  See, e.g., Boyce v. Eggers, 513
F. Supp. 2d 139, 144 (D.N.J. 2007) (holding that a city employee
was not acting under color of law when she filed a complaint with
the police).  In Bennings v. Kearney, 2 Fed. App'x 218 (2d Cir.
2001), for example, the plaintiff had alleged that he was falsely
arrested for assaulting a family member of a police officer.  Id.
at *1.  The officer was alleged to have filed a false report with
in his own police jurisdiction to have the Plaintiff arrested.

Id.  The Second Circuit Court of Appeals found that the officer was not acting under color of state law, since anyone can file a criminal complaint.  Id.

Plaintiff's allegation, however, is that the nature of this particular complaint-warrant required Defendant to be acting in his official capacity.  But this allegation is contradicted by New Jersey law and the document itself.  New Jersey law provides for two forms of criminal process upon a Complaint: arrest warrant and summons.  A warrant can be based on the complaint of any individual, but must be signed by a judicial officer.  N.J. R. 3:3-1(a).  A summons, on the other hand, need not be signed by a judicial officer if a law enforcement officer who made the complaint issues the summons.  Id.

The relevant document in this case was a warrant, not a summons.  We know this because Plaintiff attached the actual document which is identified as a "complaint-warrant," it was used to arrest Plaintiff, and the document was not issued by the complaining witness.  Although the warrant was facially defective, since among other reasons it was not signed a judicial officer, this does not serve to transform it into a summons.  Therefore, the nature of the complaint-warrant does not itself show that Defendant was acting under color of state law.

It is alleged that this defective complaint-warrant was used as the basis for Plaintiff's arrest.  This leads to a reasonable

inference that one or more people acting in their official capacities performed improper acts because of Defendant's employment as a police officer.  One imagines that it is unusual for someone with no relationship to the police to swear an unsigned warrant that causes the New Jersey State Police to arrest someone.  But while it is reasonable to infer that Defendant used various social connections to have his ex-wife arrested, it does not follow that he was acting under color of state law.  Just as a family member might receive special treatment from a related police officer without the family member acting under color of state law, Defendant may simply have been calling upon his friendship or relationship with his colleagues. Nothing in the Complaint suggests that his actions were taken by virtue of his authority as an officer of the law, as distinct from him knowing and having as co-conspirators people who were acting under color of state law.

In sum, as currently pleaded, there is nothing other than conclusory allegations in the complaint to suggest that Defendant Sampson did anything other than swear a misleading criminal complaint against Plaintiff in his private capacity.  Thus, at least as now alleged, Defendant may be liable for any number of torts for his conduct in this case, but § 1983 cannot form a basis for that liability.

11

**IV.   CONCLUSION**

Because the Complaint does not allege facts showing that Defendant Sampson was acting under color of state law when he allegedly swore a misleading criminal complaint and attended Plaintiff's arrest, the Complaint does not state a claim under 42 U.S.C. § 1983.  The Court will therefore grant the motion to dismiss the § 1983 claim as against Defendant Sampson, but do so without prejudice to Plaintiff moving for leave to file an amended complaint to supplement the current complaint with any allegations that would, consistent with this Opinion, state a claim against Sampson.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").  The Court is not persuaded at this stage that such amendment would be futile.  The accompanying Order will be entered.


__June 20, 2011__                              __ s/ Jerome B. Simandle__
Date                              JEROME B. SIMANDLE
                              United States District Judge